## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-20079-JAR** |
| **DAVID CARR,** | **25-2121** |
| **Defendant.** | |

## MEMORANDUM & ORDER

Petitioner David Carr, a federal prisoner proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 462). Carr claims his counsel rendered ineffective assistance of counsel in a myriad of ways. The Government has responded, and Carr has filed a reply. The Court now denies Carr's motion and also denies Carr a certificate of appealability ("COA").

### I.    Background and Procedural History

On February 14, 2023, a jury convicted Carr of conspiracy to distribute and possess with intent to distribute methamphetamine, kidnapping, and use of a firearm in furtherance of a drug trafficking crime.[1]

On July 6, 2023, this Court imposed within-Guideline-range sentences of: life imprisonment on the kidnapping count; 480 months on the drug count, concurrent with the

---

[1] Doc. 334.

kidnapping sentence; and 120 months on the firearm count, consecutive to the drug and kidnapping sentences.[2]

Carr's appellate counsel filed an *Anders* brief alerting the Tenth Circuit that there was no good faith basis to challenge Carr's conviction or sentence. Appellate counsel noted that: the jury instructions correctly stated the law; there were no errors in this Court's rulings on trial objections and evidentiary matters; the evidence was sufficient to support the convictions on each count; there was a basis for the guideline enhancements applied by this Court; and that there was no basis to challenge the reasonableness of the sentence.

On March 15, 2024, the Tenth Circuit dismissed Carr's appeal.[3] On March 14, 2025, Carr filed the instant § 2255 motion.

## II.    Trial Evidence[4]

On April 18, 2019, Mariah Vieni and her boyfriend D.B. were at a "trap house" at 1605 Ruby in Kansas City, Kansas to procure and use methamphetamine from codefendant Brandon West who routinely sold methamphetamine there. West was routinely supplied by Carr; and Carr was routinely supplied by codefendant James Michael Poterbin. West ran out of methamphetamine that day and Vieni offered to arrange to buy more from a woman she knew, Denise Byrd. West contacted Carr and Carr approved the transaction. West provided $500 to Vieni to buy the methamphetamine. West testified that he understood that this $500 belonged to Carr and Poterbin. Vieni left the house, while West, D.B. and others waited at the house. Byrd

---

[2] Doc. 386.

[3] Doc. 444.

[4] *See* Doc. 373 at 6–11 (Presentence Report Offense Conduct); Doc. 426 at 5–17 (Court's oral ruling denying Carr's motion for judgment of acquittal or new trial).

stole Vieni's money. When Vieni did not return to the house after more than an hour, West and the others believed Vieni had stolen the money.

West ordered D.B. upstairs and ordered codefendant Randi Serna to watch him. West contacted Carr about Vieni's alleged theft of the drug money, and Carr in turn called Poterbin. Historical cell phone tower records and other geolocation data showed that shortly after Carr called Poterbin, Poterbin left his house, traveled to a location in close proximity to Carr's location and then they each, in separate vehicles, traveled to the Ruby house, arriving at approximately the same time.

Others in the Ruby house saw Carr and Poterbin arrive and go upstairs where D.B. was being held by Serna. Brandon West testified that he saw Carr and Poterbin brandishing firearms as they went upstairs. D.B. testified that they pointed their firearms at him, forcing him to go to another upstairs room. Carr and Poterbin ordered D.B. to disrobe and forced him to lay on his stomach with his wrists ziptied together. Codefendant Randi Serna was in an adjacent room upstairs, but saw Carr and Poterbin go in the other room with D.B. The only individuals in that room were Carr, Poterbin, and D.B. Carr and Poterbin acted in concert in torturing D.B. Carr later told Byrd that in retaliation for Vieni stealing from him, he and Poterbin took it out on D.B. And Poterbin later told codefendant Bryan Spaulding that despite the small amount of money, they tortured D.B. based on principle.

D.B. was pistol whipped. Someone hit D.B.'s ankles with a hammer, and unsuccessfully attempted to cut off D.B.'s finger. Serna testified that she heard them pistol whipping D.B. and heard a gunshot. D.B. sustained a gunshot to one leg and may have sustained a gunshot to the other leg. During the torture session, Carr called Vieni on D.B.'s phone, demanding that Vieni give back the money. During the phone call, D.B. could hear Vieni and Carr's conversation and

Vieni could hear Carr and Poterbin torturing D.B.  During his testimony, D.B. identified Carr and Poterbin as the individuals who had tortured him, but could not identify which one shot him, because he was lying face down when he was shot.

After they tortured D.B. over the course of 40 minutes, Carr and Poterbin dragged D.B. downstairs where they bound him, covered his head with a shirt, and wrapped him in filthy tarp. Carr and Poterbin discussed what to do with Serna, a potential witness to their torture of D.B. They decided to force Serna to participate; Poterbin handed her a knife and ordered Serna to stab D.B.  They then left D.B. for dead in the Ruby house.  D.B. laid there for more than a day, severely injured, unable to walk or see, bleeding, his open sores covered in maggots.  Vieni and family members found D.B. there and rescued him from the house.   When West advised Carr that D.B. had been rescued, Carr ordered West to burn down the Ruby house.  West set the house on fire, and shortly thereafter, Carr picked West up from a nearby location.

## III.    Standards

Carr seeks relief under § 2255 on the basis that he received ineffective assistance of counsel in eight ways, which the Court will address in turn.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence."[5]  A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[6]  First, a petitioner must show counsel's performance was deficient in that it "fell

---

[5] U.S. Const. amend. VI.

[6] 466 U.S. 668 (1984).

below an objective standard of reasonableness."[7]  This standard is "highly demanding."[8]
Strategic or tactical decisions on the part of counsel are presumed correct, unless they were
"completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible
defense strategy."[9]  In all events, judicial scrutiny of the adequacy of attorney performance must
be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance; that is, the defendant must overcome
the presumption that under the circumstances, the challenged action might be considered sound
for trial strategy."[10]  Moreover, the reasonableness of the challenged conduct must be evaluated
from counsel's perspective at the time of the alleged error, and "every effort should be made to
'eliminate the distorting effects of hindsight.'"[11]

 To prevail on *Strickland*'s performance prong, a defendant "must show 'that counsel's
representation fell below an objective standard of reasonableness.'"[12]  There is a "strong
presumption that counsel provided effective assistance."[13]  "A fair assessment of attorney
performance requires that every effort be made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from
counsel's perspective at the time."[14]  "[T]o show that his counsel was deficient, [defendant] must

---

[7] *Id.* at 688.

[8] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[9] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (alteration in original) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)).

[10] *Strickland*, 466 U.S. at 689 (quotation and internal citation omitted).

[11] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[12] *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland*, 466 U.S. at 688).

[13] *United States v. Holloway*, 939 F.3d 1088, 1103 (10th Cir. 2019) (quoting *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000)); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

[14] *Strickland*, 466 U.S. at 689.

demonstrate that the errors were so serious that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"[15]

"The Supreme Court has recognized the deficient performance prong 'is necessarily linked to the practice and expectations of the legal community' as well as the 'prevailing norms of practice as reflected in American Bar Association standards and the like.'"[16]  Counsel has a "critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'"[17]  Further, counsel's "ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."[18]

Second, a petitioner must show his counsel's deficient performance actually prejudiced his defense.[19]  To prevail on this prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[20]  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[21]  This, in turn, requires courts to focus on "the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."[22]  *Strickland*'s prejudice prong requires a defendant to "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[15] *Hanson v. Sherrod*, 797 F.3d 810, 826 (10th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687).

[16] *United States v. Kearn*, 578 F. Supp. 3d 1221, 1231 (D. Kan. 2022) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)).

[17] *Padilla*, 559 U.S. at 370 (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)).

[18] *Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

[19] *Strickland*, 466 U.S. at 691–92.

[20] *Id.* at 694.

[21] *Id.* at 689.

[22] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citations omitted).

proceeding would have been different.'"[23]  "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."[24]  When, as in this case, a defendant alleges ineffective assistance led him to reject a plea offer, a defendant must establish that "but for the ineffective advice of counsel there is a reasonable probability" that:

> [1] defendant would have accepted the plea . . . [2] the prosecution would not have withdrawn it in light of intervening circumstances . . . [3] the court would have accepted its terms, and . . . [4] the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.[25]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[26]  This standard "does not require that the petitioner show that counsel's deficient conduct more likely than not altered the outcome in the case . . . ."[27]  "However, mere speculation is not sufficient to satisfy this burden."[28]

A petitioner must satisfy both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.  "The performance component need not be addressed first.  'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"

Finally, Petitioner appears *pro se*.  Therefore, his filings are to be construed liberally and not held to the standard applied to an attorney's pleadings.[29]  If a petitioner's motion can be

---

[23] *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Strickland*, 466 U.S. at 694).

[24] *Id.*

[25] *Kearn*, 2022 WL 37648, at *7 (quoting *Lafler*, 566 U.S. at 164).

[26] *Strickland*, 466 U.S. at 694.

[27] *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 693).

[28] *Id.* (citations omitted).

[29] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

reasonably read to state a valid claim on which he could prevail, a court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.  It is not, however, "the proper function of the district court to assume the role of advocate for the pro se litigant."[30] For that reason, the Court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.

## IV.    Discussion

Carr alleges that his counsel[31] rendered ineffective assistance by: (1) failing to challenge the sufficiency of the kidnapping evidence or the timing or number of times the victim was shot; (2) failing to object to the jury instruction on the elements of § 924(c) and failing to seek a lesser-included instruction on all counts; (3) failing to file motions to suppress and failing to "get[] a larger time frame of call pings"[32]; (4) failing to argue that the convictions for drug conspiracy and § 924(c) violated the Double Jeopardy Clause; (5) failing to challenge the sentence under *Apprendi*; (6) failing to request necessary pretrial discovery materials or file appropriate motions for disclosure of exculpatory evidence; (7) failing to inform Carr as part of the plea negotiations that kidnapping was punishable by life in prison; and (8) failing to challenge the sentence as grossly disproportionate to the offense and failing to adequately consider mitigating factors including Carr's personal history and characteristics.

The Court addresses each in turn.

---

[30] *Id.*

[31] Carr was briefly represented by Assistant Federal Public Defenders Che Ramsey and Tim Burdick, then by Michael Duma, and finally by Dionne Scherff, who represented him during most of the pretrial phase, and during the trial, post-trial motions, and sentencing phases.

[32] Doc. 462 at 7.

### A. Failure to challenge the sufficiency of evidence

Carr argues that his counsel, Dionne Scherff, rendered ineffective assistance by failing to challenge the sufficiency of the kidnapping evidence or the timing or number of times the victim was shot. But Ms. Scherff did challenge the sufficiency of the kidnapping evidence, in Carr's Motion for Judgment of Acquittal, or in the Alternative a New Trial.[33] This Court denied that motion, discussing the ample evidence that supported Carr's kidnapping conviction.[34] Furthermore, Carr's appellate counsel filed an *Anders* brief, conceding that there was sufficient evidence to support the convictions, including the kidnapping conviction.[35]

Moreover, Carr fails to specify or explain how the evidence of kidnapping was insufficient. As the Tenth Circuit has instructed, "the allegations must be specific and particularized, not general or conclusory."[36] And, a court need not "fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."[37]

The only specificity Carr offers is suggesting that his counsel should have focused on the timing and number of gunshots inflicted on D.B., apparently to challenge the credibility of the victim. But Ms. Scherff discussed with Carr the fact that the medical records showed that D.B. suffered multiple injuries, including a gunshot wound; and that there was no evidence that D.B. sustained these injuries elsewhere or at some other time.[38]

---

[33] Doc. 342 at 6–8.

[34] Doc. 426 at 12–16 (Transcript of Court's oral ruling denying motion for judgment of acquittal or new trial).

[35] *See United States v. Carr*, No. 23-3127 (10th Cir. 2024), Doc. 46 at 9–11; Doc. 68 at 11–12.

[36] *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[37] *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

[38] Doc. 491-1 at 1 (Scherff, D. Aff.).

To be sure, Ms. Scherff cross-examined D.B. extensively about his inability to see who was beating him, about his prior statements that he did not know who shot him and that he did not remember being shot a second time, and about Brandon West's role in the torture.[39] But Ms. Scherff explained that she made a strategic decision not to challenge when D.B. was shot and how many times he was shot.[40]  This strategic decision makes sense given D.B.'s testimony that he could not *see* who shot him, given the undisputed evidence that D.B. sustained many serious injuries from being beaten, shot and stabbed, and given the lack of evidence that those injuries were incurred anywhere other than the Ruby house.

Ms. Scherff made the strategic decision that it would have risked undermining the credibility of Carr and his counsel to suggest that D.B. incurred the injuries elsewhere, or had shot himself, or to question D.B. in detail about whether he was shot once or twice.  After all, Carr's defense was that he was not involved in torturing D.B. at all.[41]  Reasonable strategic decisions such as this one are not a proper basis to argue ineffective assistance of counsel.[42]

## B.  Jury Instructions

Carr claims that counsel rendered ineffective assistance by failing to object to the jury instruction that listed the elements of 18 U.S.C. § 924(c), and in failing to seek a lesser-included instruction on all three counts.  But Carr's argument is conclusory.  He offers no basis or explanation of how this jury instruction misstated the law or was otherwise improper, nor how or why lesser-included offenses should have been instructed.

---

[39] Doc. 422 at 452, 455–56, 458–59, 468.

[40] Doc. 491-1 at 1 (Scherff, D. Aff.).

[41] *Id.*

[42] *See Meek v. Martin*, 74 F.4th 1223, 1262–63 (10th Cir. 2023) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable—unless they were completely unreasonable, not merely wrong." (internal quotation marks and internal citation omitted)).

Moreover, the § 924(c) instruction was jointly proposed by Carr and the government and was an accurate statement of the law, consistent with the Tenth Circuit Pattern Instruction.[43]  Ms. Scherff provided to Carr copies of the Tenth Circuit Pattern Instruction and discussed with him the instructions for kidnapping and conspiracy to possess with intent to distribute methamphetamine.  Carr expressed no concern with the instructions that were filed.[44]  Counsel was not ineffective for failing to object, and Carr cannot demonstrate prejudice, given that the instruction accurately stated the law.[45]

### C.  Suppression Motion

Carr argues that counsel rendered ineffective assistance by failing to file motions to suppress and failing to "get[] a larger time frame of call pings."[46]  Yet again, Carr does not provide a basis for this claim, as he does not identify any evidence that was obtained illegally and subject to suppression.  As Ms. Scherff explained, there simply was no search or seizure that may have been subject to suppression, for most of the evidence was "historical" and Carr's own brief statement to law enforcement was properly Mirandized.[47]  Most of the evidence came from witness interviews; there was very little physical evidence.[48]  To the extent there was physical evidence, it was likely destroyed  when Brandon West burned down the house as Carr ordered him to do.

---

[43] *See* Pattern Crim. Jury Instr. 10th Cir. 2.45.1 (2025); Doc. 312 at 12–13; Doc. 332 at 20–21.

[44] Doc. 491-1 at 2.

[45] *See United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022) (explaining that it is likely not deficient performance to not raise an argument that lacks merit; and a defendant is not prejudiced by failing to raise a meritless claim).

[46] Doc. 462 at 7.

[47] Doc. 491-1 at 2 (Scherff, D. Aff.).

[48] Doc. 491-2 at 1 (Duma, J. Aff.).

In his Reply, Carr for the first time argues that counsel should have challenged D.B.'s identification of the people involved, because law enforcement showed D.B. only single photos, rather than a photo lineup for each suspect.  Again, Carr provides no factual support for this argument, nor any legal basis that D.B.'s identification was the product of an improper, suggestive identification.  Ms. Scherff had "repeatedly told Mr. Carr that while some of the government's witnesses may have credibility issues that could be attacked, everyone involved in the incident knew Mr. Carr, so there was no potential for misidentification."[49]

Carr further argues that his counsel failed to obtain a larger time frame of the cell phone call pings, which he alleges would have shown that his cell phone routinely pinged off the same cell towers, on dates other than the date of the crime.  This, of course, does not support an argument that counsel should have sought suppression of evidence; at best, it might support an argument that counsel should have sought more discovery on the cell phone tower records.

Ms. Scherff  "hired a nationally renowned cell site and geolocation expert to attack, to the extent possible, and put the government's location evidence into context."[50]  Ms. Scherff and Carr never discussed expanding the scope of cell tower or call records to obtain.  More records would not have been material to Carr's defense.[51]  The defense was that Carr did not torture D.B., and the defense focused more on "the lack of communication from Brandon West to Mr. Carr" after West suspected Vieni had stolen the $500.[52]

Ms. Scherff further explained that it was also a strategic decision to not seek cell phone tower records showing Carr in the vicinity of the Ruby house on other dates.  Counsel explained

---

[49] Doc. 491-1 at 6 (Scherff, D. Aff.).

[50] *Id.* at 2.

[51] *Id.*

[52] *Id.*

that distancing Carr from the activities at the Ruby house (a known drug house) was a strategic decision.[53]  Given that Carr was also charged with a drug conspiracy, this was not a decision indicative of ineffective assistance.

Furthermore, Carr cannot demonstrate that the outcome of the proceedings would have been any different had counsel obtained and offered a larger time frame of these records.  There was overwhelming evidence that at the time D.B. was being beaten, shot, stabbed and left for dead in the Ruby house, Carr and codefendant Poterbin were there.  The cell tower records showing Carr's proximity to the scene of the crime served to corroborate the testimony of multiple witnesses who were in the Ruby house during the kidnapping, including Randi Serna who was in an adjacent room while Carr and Poterbin tortured D.B., and who participated in the crime by stabbing D.B.  Thus, Carr cannot show prejudice.

### D. Double Jeopardy

Carr further claims that his counsel was ineffective by failing to argue that the convictions for conspiracy to distribute methamphetamine and using a firearm in furtherance of a drug trafficking crime violated the Double Jeopardy Clause of the Fifth Amendment.  But Carr cannot demonstrate that his counsel was ineffective for not making such an utterly frivolous argument.  The Double Jeopardy Clause provides that no person may be "twice put in jeopardy" "for the same offence."[54]  Carr stood trial and was convicted of these two separate and distinct offenses: a drug conspiracy and using a firearm in furtherance of a drug trafficking crime.

---

[53] *Id.*

[54] U.S. Const. amend. V.

### E. *Apprendi*

Carr argues that counsel rendered ineffective assistance by failing to challenge the sentence under *Apprendi*, because the drug quantity and possession of firearms were not proven beyond a reasonable doubt and because counsel failed to challenge the applied sentencing enhancements for drug quantity or possession of firearms.  But neither argument is accurate.

Here, the only facts that affected the statutory penalties were, in fact, submitted to the jury—the amount of methamphetamine involved in the conspiracy and whether the defendant brandished or discharged a firearm.[55]  The jury's verdict included answers to special interrogatories asking them to find, beyond a reasonable doubt, the amount of methamphetamine and whether the defendant brandished or discharged a firearm.[56]  Thus, there was no violation of *Apprendi*,[57] and counsel had no basis to challenge the sentence under *Apprendi*.

Carr also seems to conflate the requirements of *Apprendi* with the Court's process of determining what sentencing guideline enhancements applied.  The Court applied enhancements consistent with the jury's verdict.[58]  But there was no legal basis to challenge these enhancements under *Apprendi*, given that the jury specifically found the underlying facts beyond a reasonable doubt.

### F.  Discovery Motions

Carr argues that his counsel rendered ineffective assistance by failing to request necessary pretrial discovery materials or failing to file appropriate motions for disclosure of

---

[55] Doc. 334 at 1–3.

[56] *Id.*

[57] *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ( "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

[58] Counsel objected to the two-level enhancement for use of a weapon on the basis that Carr denied being present and torturing D.B. with a weapon.  *See* Doc. 373 at 29 (Presentence Report).

exculpatory evidence.  Again, Carr fails to specify or detail what necessary discovery materials counsel failed to request or what discovery motions counsel failed to file.

Moreover, the criminal pretrial and case management order used in this case and widely in this district was designed to make discovery motions largely unnecessary.[59]  It specifically provided that "a specific request is not necessary to trigger the obligations set forth in [the] Order or any discovery-related rule or statute," including exculpatory *Brady* materials.[60]  Counsel was not ineffective for failing to make a request that was already covered in and deemed unnecessary by the pre-trial order.  The docket sheet in this case reveals that the government provided robust discovery, documenting 37 rounds of discovery provided to the defendants.[61]

Furthermore, Ms. Scherff  reviewed the extensive discovery with Carr on multiple occasions, provided a complete set of discovery to him, hired an investigator and provided him with the results of that investigation, and retained an expert in cell site and geolocation.[62]  Ms. Scherff had "over 36 meetings with Mr. Carr and sent him a minimum of 120 pieces of legal correspondence."[63]  Carr simply fails to show that his counsel provided ineffective assistance on this basis.

### G.  Plea Negotiations

Before deciding whether to plead guilty, a defendant is entitled to effective assistance of counsel.[64]  Carr argues that counsel rendered ineffective assistance by failing to inform him as

---

[59] Doc. 61.

[60] *Id.* at 6.

[61] *See* Doc. 298 (Notice of Dissemination of Discovery Round 37 by USA).

[62] Doc. 491-1 at 3–4 (Scherff, D. Aff.).

[63] *Id.* at 9.

[64] *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010); *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to

part of the plea negotiations that kidnapping was punishable by life in prison.  Carr claims his counsel told him that "he could only get 40 years because everything would run in with Count one [conspiracy to distribute methamphetamine] and it has a cap of 40 years."[65]  Carr claims that if he knew he could  receive a life sentence, he would have accepted a binding plea offer with a range of 15–18 years.[66]

Carr's claim is contradicted by the record.  The original Indictment,[67] the Superseding Indictment,[68] and the Second Superseding Indictment[69] all included a penalty sheet advising that the statutory maximum sentence for the  kidnapping count was life in prison.  Carr received copies of these Indictments, including the penalty pages, from one or more counsel.[70]  And during Carr's February 25, 2020 arraignment on the original Indictment, the United States Magistrate Judge informed Carr that the maximum penalty for the kidnapping charge was "[n]ot more than life imprisonment."[71]

Moreover, additional correspondence and details provided by two of Carr's counsel further undermine his claim.  Shortly after Carr was initially charged, on May 8, 2020, Mr. Duma explained to him that his guideline range on the kidnapping count was 360 months to life in prison, and the firearm count carried a mandatory, consecutive 10-year sentence,[72] and sent

---

accept it"); *United States v. Washington*, 619 F.3d 1252, 1259 (10th Cir. 2010) ("A defendant has the right to make a reasonably informed decision whether to accept a plea offer.").

[65] Doc. 462 at 12.

[66] *Id.*

[67] Doc. 1.

[68] Doc. 87.

[69] Doc. 158 at 7.

[70] Doc. 491-4 at 1 (Burdick, T. Aff.); Doc. 491-1 at 6 (Scherff, D. Aff.).

[71] Doc. 485 at 4.

[72] Doc. 491-2 at 2 (Duma, J. Aff.).

him a letter on June 3, 2020, memorializing this conversation.[73]  On May 15, 2020, Mr. Duma again explained to Carr that he was likely a criminal history category VI and that the guidelines on the kidnapping charge was 360 months to life in prison.[74]  Ms. Scherff also discussed possible sentencing outcomes with Carr, referencing Mr. Duma's letter that advised he faced up to life in prison.[75]

Because of his exposure to a life sentence, Ms. Scherff encouraged Carr to consider a binding plea pursuant to Rule 11(c)(1)(C), "because we knew his guideline range could be as high as life."[76]  In fact, Ms. Scherff talked to Carr about this "many times."[77]  Ms. Scherff highlighted cases in which defendants convicted of kidnapping received substantial sentences, such as 480 months or 600 months.  She also highlighted the risk of going to trial, given that Carr was so well known to the numerous witnesses who would be testifying about his involvement in the kidnapping and torture.[78]

Ms. Scherff engaged in plea negotiations with the government.  Carr rejected several offers by the government, and the government in turn rejected his offers of 10-year and 15-year binding plea agreements.[79]  In December 2021, Ms. Scherff sent Carr the government's plea offer of a 12–20 year binding plea in writing.  She then met with Carr and explained that other

---

[73] Doc. 491-3.

[74] Doc. 491-2 (Duma, J. Aff.).

[75] Doc. 491-1 at 6 (Scherff, D. Aff.).

[76] *Id.*

[77] *Id.*

[78] *Id.* at 7.

[79] *Id.* at 7–8.

codefendants' presentence reports were coming back with guideline sentences of life in prison. She told him he should expect the same. Nonetheless, Carr rejected the government's offer.[80]

In November 2022, the government offered a binding plea with a 15–18 year range. Ms. Scherff met with Carr on December 8, 2022, and advised him he "had to seriously consider accepting the government's offer."[81] She told Carr that "if he was convicted at trial he was likely to be in federal custody for the rest of his life."[82] Ms. Scherff said she and Carr had many discussions like this. Carr rejected this plea offer.[83]

Carr countered with other plea offers that were declined by the government. Ms. Scherff sent Carr a letter noting that they had discussed the sentencing exposure on his case numerous times and that she was confident that he was fully informed of the potential sentencing consequences if he was convicted at trial, but she nonetheless offered to discuss it further if he had any questions.[84]

On January 4, 2023, Ms. Scherff advised Carr that the Court would conduct a *Lafler*/*Frye* hearing at the limine conference, including that the government offered a binding plea to the kidnapping charge with a 15–18 year range, which Mr. Carr had rejected.[85] At the limine hearing on January 5, 2023, this Court conducted a *Lafler*/*Frye* inquiry, confirming that Carr had received all of the government's plea offers.[86] Ms. Scherff confirmed that she had relayed the

---

[80] *Id.* at 8.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.* at 9.

[86] Doc. 299 at 8.

offers to Carr personally and in writing.[87]  Ms. Scherff further confirmed that Carr had a full opportunity to discuss the offers with her and that she evaluated the risks and benefits of accepting or rejecting the plea offers.[88]  Ms. Scherff added that as recently as December 2022, she reviewed with Carr his sentencing exposure should he be convicted by a jury, as compared to the offers from the government.[89]  The Court asked Carr if he agreed with his counsel's statements, and he said that he did.[90]

Carr simply does not meet his burden of establishing that he was not fully advised of the risk of proceeding to trial and the benefits of accepting the government's plea offer.  On the contrary, the record clearly establishes that Carr knew kidnapping was punishable by up to life in prison, that he was repeatedly advised of the risks of proceeding to trial, and that Ms. Scherff repeatedly encouraged him to strongly consider the government's plea offers given the high likelihood he would be convicted at trial and the substantial sentence he would face.

## H. Sentencing

Carr argues that his counsel rendered ineffective assistance by failing to challenge the sentence as grossly disproportionate to the offense and by failing to adequately consider and present mitigating factors, including Carr's personal history and characteristics.

Although Carr claims that his sentence was grossly disproportionate, and thus violated the Eighth Amendment's prohibition on cruel and unusual punishment, "'[g]enerally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth

---

[87] *Id.*

[88] *Id.* at 9.

[89] *Id.*

[90] *Id.*

Amendment.'"[91]  Carr's life sentence on the kidnapping count was within the statutory limit and within the Sentencing Guideline range and thus did not violate the Eighth Amendment.  Counsel did not, therefore, perform deficiently by failing to raise such a challenge.

Nonetheless, Ms. Scherff advocated for a downward variance, a sentence of 120 months on the kidnapping count, which she argued was a reasonable sentence that was sufficient but not greater than necessary.[92]  She also advocated for a concurrent 120-month sentence on the drug count and a 120-month (mandatorily consecutive) sentence on the firearm count, for a total controlling sentence of 240 months.[93]  Ms. Scherff further argued that a guideline sentence would effect an unwarranted sentencing disparity with Carr's codefendants as well as with defendants nationwide with similar records and similar conduct.[94]

Moreover, Ms. Scherff did consider and present mitigating factors in Carr's history and characteristics, including his use of alcohol, marijuana, crack cocaine and methamphetamine beginning at the age of 12 to 13, and the neurological effect of such early drug use on a person's capacity to evaluate consequences and control their behavior.  Ms. Scherff also apprised the Court of Carr's long struggle with mental health, his solid work history and the strong family support he still enjoyed.[95]  Carr does not point to any mitigation evidence that his counsel failed to present or that the Court did not consider.

---

[91] *United States v. Tolliver*, 730 F.3d 1216, 1231 (10th Cir. 2013) (quoting *United States v. Gillespie*, 452 F.3d 1183, 1190 (10th Cir. 2006) (internal quotation marks omitted)); *see also United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006) (noting the Supreme Court has only struck down two Eighth Amendment challenges to sentences "over the past century, . . . a sentence of fifteen years in chains and at hard labor, plus permanent surveillance and civil disabilities, for the crime of falsifying a public document . . . [and] a sentence of life imprisonment without the possibility of parole imposed under South Dakota law against a nonviolent recidivist whose final crime was writing a 'no account' check with the intent to defraud").

[92] Doc. 371 at 2–3.

[93] *Id*. at 2.

[94] *Id*. at 4–6.

[95] *Id*. at 7–12.

In his Reply, Carr further claims that counsel gave ineffective assistance by failing to argue that the Court's application of a six-level enhancement for the demand for ransom was impermissible double-counting.  But Ms. Scherff did object to the ransom enhancement,[96] arguing that the trial evidence did not show that Carr demanded a ransom, a codefendant did. The Court nonetheless applied the enhancement under principles of relevant conduct.[97]  And, counsel did not render ineffective assistance in not arguing that this enhancement constituted double-counting, because such an argument would be wholly without merit.  The guideline for kidnapping does not include conduct constituting a demand for ransom.  Thus, the guideline enhancement for a demand for ransom could not constitute double-counting.   In short, Carr has not met his burden to establish ineffective assistance with respect to his sentence.

## V.     CONCLUSION

Carr has failed his burden of showing ineffective assistance of counsel.  He has failed to show deficient performance and/or resulting prejudice in any claimed respect, as *Strickland* requires.  He has failed to rebut the presumption that counsel's performance was within the wide range of professionally competent assistance and has failed  to show that counsel performed deficiently.  Nor has Carr met his burden of showing that counsel's alleged deficient performance prejudiced him by having an adverse effect on his defense, that is, a showing that but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different.

---

[96] Doc. 373 at 28.

[97] *Id.*

Finally, because the motion and the files and records of the case conclusively show that Carr is not entitled to relief, this Court denies Carr's request for a hearing on his claims.[98]

## VI.    Certificate of Appealability

Under Rule 11 of the Rules Governing § 2255 Proceedings, the Court must issue or deny a COA when making a ruling adverse to the petitioner.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[99] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[100]  For the reasons stated above, the Court finds that Petitioner has not made this showing and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Carr's Motion Under  28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 462) is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 15, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[98] *See* 28 U.S.C. § 2255(b).

[99] 28 U.S.C. § 2253(c)(2).

[100] *Saiz v. Ortiz,* 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)).